PULVERS PULVERS & THOMPSON, LLP
950 Third Ave 11th Floor
New York, NY 10022
Marc R. Thompson
(212) 355 8000

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGAN BARROS,<br><br>                   *Plaintiff*<br><br>-against-<br><br>NATIONBAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>                   *Defendant* | 18-cv-03394 (VSB)(SLC)<br><br>AFFIRMATION OF MARC R. THOMPSON IN SUPPORT OF MOTION TO GRANT AND FIX ATTORNEYS FEES |

MARC R. THOMPSON affirms:

    1.    I am the former attorney of record for plaintiff MEGAN BARROS and senior member of PULVERS, PULVERS & THOMPSON, LLP.

    2.    I personally represented plaintiff in this lawsuit prior to moving to withdraw as counsel on because of irreconcilable differences that arose between myself and the client.

    3.    I submit this affirmation in support of a motion for an order recognizing the movant's charging lien pursuant to New York Jud. L §475 and granting and fixing attorneys' fees to be paid from the settlement proceeds of the above matter.

### PROCEDURAL HISTORY

    4.    This matter was referred to Hon. Sarah L. Cave, Magistrate Judge by Hon. Vernon S. Broderick, United States District Court Judge resolve a dispute over attorneys' fees due and owing to PULVERS PULVERS & THOMPSON, LLP under. N.Y. Jud. L. §475 arising from the firm's representation of plaintiff in the above entitled action (ECF 49).

1

5.      This case arises out of an incident that occurred on April 14, 2017 while plaintiff was present on the Amtrak platform at Penn Station when an AMTRAK police officer was forced to Taser a suspect. After discharging the Taser to stop the suspect the commuters on the platform panicked and stampeded pushing plaintiff to the ground causing her to sustain an injury to her hip. [1]

6.      On July 10, 2017 plaintiff retained Pulvers, Pulvers & Thompson LLP (herein "PPT") under a written retainer agreement to prosecute a lawsuit for personal injuries sustained during the incident. In consideration of PPT's services, plaintiff agreed to pay PPT one-third (1/3) of any monies that may come to her hand whether recovered "by suit, settlement or otherwise." In addition, it was agreed "if the client elects to have the Firm advance the money for costs and expenses the fee owed to Pulvers, Pulvers & Thompson, LLP will be calculated on the gross recovery plus the costs and expenses advanced by the firm". Plaintiff does not dispute signing the retainer agreement.

7.      Noteworthy is the fact that on the same day that PPT was retained, my office sent a claim letter to NATIONBAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK (hereinafter "Amtrak") seeking an amicable disposition of plaintiff's claim.

8.      Amtrak responded by advising me that it would not honor the claim on the ground that there was no liability.

9.      Unable to reach a settlement, PPT commenced a lawsuit on April 3, 2018 against Amtrak in State Supreme Court, New York County. The case was assigned Index Number 152994/2018.

---

[1] It is important for the Court to note that Amtrak police officer Joseph Nativo who discharged the Taser setting off the stamped by panicked commuters that resulted in the injury to Ms. Barros was found to have acted appropriately.

2

10. Shortly thereafter the case was removed to this court (ECF1) under 28 U.S.C. §§1331 and 1349 and pursuant to 28 U.S.C. §1441 on the ground that Amtrak is more than 50% owned by the United States government (49 U.S.C. §24101 et seq).

11. A scheduling order was entered by Judge Broderick and the case was actively litigated over the next sixteen months during which there was voluminous discovery and exchange of documents and medical records as well the taking of depositions including plaintiff and Police Officer Joseph Nativo who discharged the Taser at the suspect causing the commuter stampede.

12. Shortly after the conclusion of depositions Amtrak made a $17,500 offer of settlement. The offer was communicated to plaintiff and was rejected. I personally advised plaintiff that I had reason to believe that I could improve on the offer, possibly up to $25,000. During this conversation I advised her of my opinion on liability. I told her that as serious as her injury was, in view of the fact that the police officer who discharged the taser setting off the stampede had been completely exonerated of any wrongdoing, her claim might very well not withstand a Rule 56 motion for summary judgment. Ms. Barros felt that she was entitled to much more money, perhaps hundreds of thousands of dollars. I told her that she was free to consult with other counsel but I did not believe I could get her much more for the case. I told her about the likelihood of losing the case either on a motion or at trial given the extraordinary circumstances of the incident.

13. It is important to note here that at no time did I tell Ms. Barros that if she did not accept the settlement I would withdraw as her attorney. On the contrary, I invited her to get a second opinion. Furthermore, if she chose to continue to litigate the case I would have done so.

14. My differences with Ms. Barros were chiefly concerned with the value of her injury given the circumstances of the case She felt that the defendant should pay more because of the seriousness of her injury.

15. Ms. Barros found it difficult to accept that there was no clear evidence of negligence in the case. I explained to her that insofar as the police officer was concerned the professional judgment rule more probably than not insulates the AMTRAK from liability for its employees' performance of their duties where the conduct involves the exercise of professional judgment such as making the tactical decision to discharge the Taser.[2] I further explained that since liability could not be established against the AMTRAK police officer , the only alternative would be to attempt to establish liability against Amtrak on the potential theory of crowding on the platform. The case law on this theory is equally unavailing.[3] In order to prevail on the overcrowding theory plaintiff would have to prove that were it not for the overcrowding she would not have fallen. That is certainly not the case here where it was not possible to establish that the number of commuters on the platform was the proximate cause of the injury. Rather it was police officer discharging the Taser that led the commuters – regardless of their number – to

---

[2] See, e.g. *Haddock v City of New York,* 75 NY2d 478: "Governmental immunity under the decisional law of this State does not attach to every act, but when official action involves the exercise of discretion or expert judgment in policy matters, and is not exclusively ministerial, a municipal defendant generally is not answerable in damages for the injurious consequences of that action" *Haddock* at 484. (internal citations omitted).

[3] In *Garcia v NYC Transit Auth.* 114 AD3d 720 (2014) the Appellate Division Second Dept. upholding dismissal of the complaint ruled that the Transit Authority was not negligent  merely because it permits crowds to gather on its platform.  "Before proof of negligence in this regard may be said to exist, it must be shown that the crowd was so large and unmanaged that a user of the platform was restricted in his free movements or was unable to find a safe standing place, and that as a result of either of those conditions an injury was sustained." *Garcia* at 137 relying on *Cross v Murray* 260 App. Div. 1030 (1940).

run from the scene. I told Ms. Barros that I did not believe that Amtrak could be held liable for the panic that ensued on the platform.

16.     The opinions I shared with Ms. Barros concerning her case were not well received It was at this point in the litigation of her claim that I realized we clearly had irreconcilable differences. Accordingly, I moved to have my firm relieved as her counsel and the application was granted by Judge Broderick on August 26, 2019. (ECF 31)

17.     In granting my application Judge Broderick had me submit a supplemental affirmation advising the court whether I was asserting a lien. I advised the court that my firm was exercising its right under Judiciary Law §475 to assert a "charging lien" on the settlement proceeds of the lawsuit.

18.     On May 13, 2020 I received a copy of a letter to Judge Broderick from Susanne Toes Keen (ECF 47) advising the court that:

> Ms. Barros' former counsel Marc Thompson withdrew his representation pursuant to motion and supporting affidavit in July and August 2019 (ECF#27, 30), which motion was granted by Your Honor on August 26, 2019 (ECF #31). In connection with the settlement, I contacted Mr. Thompson to determine if he was asserting a charging lien and if so, the amount he demanded. In the communications that followed, a fee dispute arose between Mr. Thompson and Ms. Barros. Plaintiff respectfully requests that this fee dispute be referred to Magistrate Judge Sarah L. Cave for a settlement conference. Ms. Barros' wants to finalize the settlement agreement but is unable to while this fee dispute exists

19.     I consented to referring the fee dispute to Magistrate Judge Cave (ECF 48). Thereafter, on May 14, 2020  Judge Broderick issued an amended Order of Reference referring the fee dispute to Magistrate Judge Cave. (ECF 49)

20.     Following Judge Broderick's Amended  Order of Reference a settlement conference regarding the fee dispute was held before Magistrate Judge Cave on June 16, 2020 but we were unable to reach a settlement. Plaintiff offered to pay my firm its disbursements but

not the fee to which we are entitled.  Her offer was rejected. As a result, I was ordered to make this motion. (ECF 53).

## ARGUMENT

21.      The dispute at bar concerns plaintiff's disingenuous and unsubstantiated claim that my firm abandoned her case, thus we are not entitled to a fee. I concede for purposes here that if I did abandon her case I would not be entitled to a fee. However, other than the fact that I moved to be relieved as her attorney, there is no proof anywhere in the record of this case that I abandoned her case.

22.      It is true that I recommended to plaintiff that she accept the offer of settlement with the understanding that I would continue to negotiate to get a higher offer. However, immediately there were  disagreements as to how much I should be asking for. In addition,  there were differences on litigation strategy going forward as there was still a considerable amount of legal work to do to bring this case to trial and in all probability to oppose what I anticipated would be a formidable Rule 56 motion. Ms. Barros and I could not agree on how to proceed and she expressed on more than one occasion that she had lost confidence in my representation.

23.      From the tenor of the settlement negotiations over the fee I believe that Ms. Barros's personal animosity for me and my firm is what has brought us to this point.

24.      The irony of the present situation is – based on my more than 40 years of experience in personal injury litigation – that I could probably have gotten her more than the $20,000 she accepted in settlement of her claim.

25.      Furthermore, I have been practicing law for over 40 years, primarily in the field of personal injury. I am well aware of the consequences of abandoning a client's claim which is why in all my years of practice I have never done so.

26. Most respectfully, the only issue before the court is a factual one: Did Pulvers Pulvers & Thompson, LLP abandon the plaintiff's case thereby relinquishing its right to pursue its charging lien? I believe that the record of this case will establish emphatically that the firm did not abandon plaintiff's case and is therefore entitled to maintain and enforce its charging lien.

27. I submit that the amount of the fee sought is clearly reasonable and should not trouble the court. Accordingly, should it please the court, I am full prepared to attend a hearing and give testimony that will establish that my firm did not abandon plaintiff's case.

28. I have always fought vigorously to advance my clients interests in every case I have ever handled and I did so for Megan Barros. Without the efforts of my firm I believe it is unlikely that the defendant would have made any offer in this case.

WHEREFORE, your affirmant respectfully requests that an order be issued to plaintiff directing her to pay the legal fees and expenses referred to herein.

Dated:  August 13, 2020
        New York, NY

*Marc R. Thompson*
Marc R. Thompson (MRT3445)