*PULVERS PULVERS & THOMPSON, LLP*
*950 Third Ave 11th Floor*
*New York, NY 10022*
*Marc R. Thompson (MRT3445)*
*(212) 355 8000*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEGAN BARROS,<br><br>*Plaintiff*<br><br>-*against*-<br><br>NATIONBAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br><br>*Defendant* | 18-cv-03394 (VSB)(SLC) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO GRANT AND FIX ATTORNEY'S FEES PURSUANT TO N.Y. JUD. L. §475

PULVERS PULVERS & THOMPSON, LLP
950 Third Avenue. 11th Floor
New York, NY 10022
(212) 355 8000

0

PRELIMINARY STATEMENT

This application is made by Plaintiff Megan Barros's former attorneys PULVERS PULVERS & THOMPSON, LLP pursuant to the Order of Magistrate Judge Sarah L. Cave to grant and fix attorneys' fees following settlement of plaintiff's tort claim. PUILVERS PULVERS & THOMPSON, LLP (hereinafter the "Law Firm") claims entitlement to attorneys' fees in accordance with New York Judiciary Law § 475.[1]

Plaintiff Barros resists the Law Firm's claim that it is entitled to attorneys' fees arguing that the Law Firm abandoned her case and is therefore not entitled to a fee. As discussed below, her claim was not abandoned. Rather, irreconcilable differences arose between Ms. Barros and Marc R. Thompson the senior partner in the Law Firm who was handling her case. As a result she sought new counsel. However, there was no abandonment of her case by the law firm.

Plaintiff does not dispute that she executed a retainer entitling the Law Firm to a contingent fee of one-third of the amount recovered by judgment or settlement of her claim. Nor does plaintiff dispute that Mr. Thompson obtained an offer of $17,500 which she rejected and which offer was recommended as being in her best interest given her injury and the liability of the defendant Amtrak. Ms. Barros was eventually represented by the New York Legal Assistance Group who was able to settle her case for $20,000.

---

[1] N.Y. Judiciary L. §475: From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration, or the provision of services in a settlement negotiation at any stage of the dispute, the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come;  and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination.   The court upon the petition of the client or attorney may determine and enforce the lien.

Law Firm seeks only a fee based on the $17,500 offer of settlement that was rejected by plaintiff.

## STATEMENT OF UNDISPUTED FACTS

The underlying action isone in which plaintiff sought monetary damages for personal injuries sustained she sustained as a result of a stampede in Penn Station.[2] Law Firm was retained by plaintiff to represent her in an action against the defendant. In consideration of its services. In representing Ms. Barros she agreed to pay Law Firm one-third of the amount recovered "by suit, settlement or otherwise." Ms. Barros and Law Firm agreed that "if the client elects to have the Firm advance the money for costs and expenses, the fee owed to Pulvers, Pulvers & Thompson, LLP will be calculated on the gross recovery plus the costs and expenses advanced by the firm". The retainer agreement is annexed herein as **Exhibit "A".**

An action was commenced by Law Firm on April 3, 2018 in New York Supreme Court and was thereafter removed to this court (ECF 1). Litigation of this case ensued for the next <u>sixteen months</u> during which the Law Firm invested the necessary resources to prosecute plaintiff's claim including completion of discovery. Shortly after the completion examinations before trial the parties engaged in settlement negotiations that resulted in an offer of $17,500.00.

Thereafter, irreconcilable differences arose between the Law Firm and the plaintiff over the sufficiency of the offer. In consequence, the Law Firm move this Court on July 26, 2019 for an Order allowing us to withdraw as counsel. (ECF 27) That motion was granted by an Order of Hon. Vernon S. Broderick dated August 26, 2019. (ECF 28), Judge Broderick's Order required Law Firm to submit a supplemental affirmation stating whether it was claiming entitlement to a

---

[2] On April 14, 2017, plaintiff was on the Amtrak platform of Penn Station when a police officer used a taser gun to disable an individual engaged in criminal conduct. As a result, there was a stampede by the passengers on the platform during which plaintiff was injured.

retaining or charging lien. After submitting the supplemental affirmation Judge Broderick recognized the Law Firm's compliance with the Court's directive to submit a supplemental affirmation stating that it was asserting a charging lien (ECF 31).[3]

After granting the Law Firm's application to be relieved as counsel, plaintiff proceeded Pro Se with the assistance of New York Legal Assistance Group. The Law Firm was advised of a settlement in the sum of $20,000 and wrote to the New York Legal Assistance Group seeking payment of $7,102.53, representing its legal fee of $5,833.33 plus disbursements of $1,269.90. A breakdown of our firm's expenses on plaintiff's case are annexed herein as **Exhibit "C".**

In correspondence dated May 11, 2020, plaintiff offered to reimburse Law Firm's expenses but refused to pay the legal fee. **Exhibit "D".** The court was advised in correspondence dated May 13, 2020 (ECF 47) that there was a dispute concerning the legal fees. The basis of plaintiff's refusal to pay the Law Firm's legal fees was her unsubstantiated averment that Law Firm did not withdraw as a result of irreconcilable differences. Rather, plaintiff argues that the Law Firm withdrew as her counsel solely because of her unwillingness to settle the case for the $17,500 offer obtained. As discussed in the affirmation of Marc R. Thompson while this is partially true, it does not tell the whole story. In fact, Mr. Thompson represented to plaintiff that he would probably be able to improve on the $17,500 settlement offer but plaintiff wanted significantly more despite the fact that Ms. BNarros was completely overlooking the poor liability in her case.

It is important to point out that following the Law Firm being relieved as counsel absolutely no substantive steps were taken in the prosecution of her case until the defendant improved their

---

[3] The charging lien entitles the attorney to recover his fee from proceeds of a settlement or judgment obtained by the attorney as a result of his skill and effort. Judiciary Law §475 expresses the legislature's policy that attorneys should have a lien on settlement proceeds for their compensation. Further, enforcement of the charging lien is founded upon the equitable notion that the proceeds of a settlement are within the control of the court.

offer by $2,500. It goes without saying that Law Firm could have obtained this result with little effort and probably an even larger settlement.

The Retainer Agreement requires plaintiff to pay Law Firm an amount equal to one-third (1/3) of the settlement. However, regardless of the amount of the settlement obtained by Ms. Barros with the help of the New York Legal Assistance Group,  the Law Firm only seeks a fee based on the $17,500 offer it obtained. Respectfully, this is more than reasonable.

### JURISDICTION

This court has jurisdiction under 28 USC 1367(c) [2]. In *Itar-Tass Russian News Agn. V Russian Kurier* 140 F.3d 442, 449(1998) the Second Circuit wrote:

> "…the Second Circuit has "long recognized that the lien created by [NY. Jud. L.] section 475 . . . is enforceable in federal courts in accordance with its interpretation by New York courts." *In re Chesley v. Union Carbide Corp*., 927 F.2d 60, 67 (2d Cir. 1991); see also *In re McCrory Stores Corp*., 19 F. Supp. 691, 693 (S.D.N.Y. 1937) ("The lien being a matter of substantive law created by a statute of New York, the bounds placed on it by authoritative decisions of the New York courts are bounds on it here.")

The decision to hear this ancillary claim is discretionary and turns upon "whether the policies of `judicial economy, convenience, and fairness to litigants' are furthered by the assumption of jurisdiction." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir. 1991) Citing *Stamford Bd. of Education,*697 F.2d at 72 (quoting *United Mine Workers v. Gibbs*,383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966)) It is well settled that "[a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . between litigants and their attorneys when the dispute relates to the main action . . . .""" *Cluett, Peabody Co. v. CPC Acquisition Co*., 863 F.2d 251, 256 (2d Cir. 1988) (quoting *Petition of Rosenman Colin Freund Lewis Cohen*, 600 F.Supp. 527, 531 (S.D.N.Y. 1984) (quoting *Marrero v. Christiano*, 575 F.Supp. 837, 839 (S.D.N.Y. 1983).

4

Moreover, a determination of this fee dispute would settle the legal issue of whether Law Firm is entitled to attorneys' fees, and consequently thereby finalizing the controversy.

## ARGUMENT

### Point 1:  Law Firm's Lien is enforceable against the proceeds of the settlement

There can be no dispute that Law Firm's lien is enforceable under NY Jud. L. §475. Plaintiff acknowledges the. existence of an attorney client relationship with Law Firm.  Plaintiff does not dispute that she retained Law Firm to prosecute a claim for personal injuries against the defendant herein. Nor does she dispute that Law Firm performed substantial work in. furtherance of the retainer she signed culminating in an offer of settlement. Under substantive New York law an attorney has a statutory charging lien, originally a lien at common law and subsequently codified by N.Y. Judiciary Law § 475.

To create a charging lien, an attorney's efforts must result in (1) a client asserting  a claim, (2) which can result in proceeds (3) payable to or for the client's benefit. *Cassirer v. Invex, Ltd. ( In re Schick)*, 215 B.R. 13, 15 (Bankr. S.D.N.Y. 1997) ( citing *United Orient Bank v. 450 West 31st St. Owners Corp.*, 155 Misc.2d 675, 589 N.Y.S.2d 390 (Sup.Ct. 1992)). It is undeniable that this is precisely the case here.

### Point 2: Plaintiff has not established that Law Firm abandoned her claim

Plaintiff has not established that her claim was abandoned. On the congtrary, she agrees that her rejection of the first offer of settlement ($17,500) and further her refusal to even consider an offer within the same range – she agreed to settle her claim for an acdditional $2,500) constituted irreconcilable differences with her attorney. As demonstrated in the affirmation of Marc R. Thompson Ms. Barros refused to consider the fact that, despite her injury, the liability in

5

this case was poor and there was a significant possibility that her claim would not survive a Rule 56 motion. Mr. Thompson invited her to seek an opinion from other counsel which she did. Finally, when she received the same legal advice from New York Legal Assistance Group she agreed to settle the case.

**Point 3:   Judge Broderick's Order allowing Law Firm to withdraw as Counsel did not determine the issue of whether the withdrawal was the result of irreconcilable differences nor was the Court required to make such a determination**

The decision to allow Pulvers Pulvers & Thompson, LLP to withdraw as counsel did not determine the issue of whether there were irreconcilable differences that led to the motion to withdraw. However, it should not go unnoticed that this issue was only brought up after the application to withdraw as counsel was granted and the Court acknowledged the existence of the charging lien.  In *Hallmark Capital Corp. v Red Rose Collection* 1997 WL 661146 (S.D.N.Y.1997) Magistrate Judge Andrew Peck addressed this issue:

> While a finding of "good cause" for charging lien purposes by definition would include "satisfactory reasons" for withdrawal under Local Civil Rule 1.4, the converse is not necessarily true.  As this case demonstrates, if the client and counsel have irreconcilable differences, that is a satisfactory reason to allow counsel to withdraw. In deciding the withdrawal motion, it is not necessary for the Court to decide who or what caused the irreconcilable differences, which goes only to "good cause" for charging lien purposes. See, e.g., *Marrero v. Christiano*, 575 F. Supp. at 837, 839-40 *Hallmark Capital.*

**Point 4:  The amount of attorneys' fees sought pursuant to the retainer is reasonable**

The rules governing the reasonableness of attorneys' fees are found in Part 1200 of the Rules of the New York Unified Court System governing the conduct of attorneys. In particular Rule 1.5 of the rules of professional ethics states:

Fees and Division of Fees

(a) A lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense. A fee is excessive when, after a review of the facts, a reasonable lawyer would be

6

left with a definite and firm conviction that the fee is excessive. The factors to be considered in determining whether a fee is excessive may include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

It is well settled that contingent fee arrangements in tort actions are enforceable.[4]

Moreover, where, as here, the reasonableness of the fee charged is not offensive to the court, the fee should be permitted and the plaintiff should be made to pay. Judge Breitel's dissent in the New York Court of Appeals case of *De Graff Foy, Conway & Holt Harris v McKessen & Robbins* 31 NY2d 862, 868 (1972) is informative on this point:

A contingent fee is different than one determined by the reasonable value of the lawyer's services. If a favorable result is achieved, the fee calculated on a contingency should be substantially higher than one calculated with certainty of payment… The reason is obvious. A fee contingent on success should be substantially higher because of the possibility that, despite the expenditure of time and effort, the lawyer may receive no compensation (internal citations omitted). *De Graff Foy* at 868.

---

[4]  Under section 474 of the Judiciary Law, contingent fee contracts ceased to be outlawed (are "not restrained by law"), but the courts have continued to exercise supervision over them. *Gair v. Peck*, 6 N.Y.2d 97, 105-06 (N.Y. 1959)

In this case, given the time expended, the work performed, the result obtained and the complexity of the legal issues concerning liability together with the fact that the Law Firm has, in fact, agreed to a reduced fee based on the offer it obtained not the full amount of the settlement, the court should enforce the retainer agreement and find that Pulvers Pulvers & Thompson is entitled to 33 1/3% of $17,500 plus disbursements of $1269.20 for a total of $7,102.53.

Dated: August 13, 2020
      New York, NY

                    Respectfully submitted:

                    PULVERS PULVERS & THOMPSON, LLP

                    *Marc R. Thompson*
                    Marc R. Thompson (MRT3445)
                    950 Third Avenue, 11th Floor
                    New York, NY 10022
                    (212) 308-0210