# PULVERS, PULVERS & THOMPSON, LLP
**950 Third Avenue, 11th FLOOR, NEW YORK, NEW YORK 10022-1304**
**TELEPHONE: (212) 355-8000 FACSIMILE: (212) 355-9000**

June 10, 2020

<u>Honorable Sarah L. Cave</u>
United States Magistrate Judge
Thurgood Marshall United States Courthouse
70 Foley Square
New York, NY 10007

                              Re: Barros v. Amtrak
                              1:18-CV-03394-VSB
        <u>Confidential Materials for Use Only at Settlement Conference</u>

Dear Hon. Cave:

      This correspondence is in reference to the settlement conference currently scheduled in this matter for Tuesday, June 16, 2020 at 2:00 p.m., regarding a fee dispute between the undersigned and the Plaintiff in this matter. This letter is sent to your honor in accordance to the Standing Order guidelines of your honor.

## **RELEVANT FACTS**

1. On April 14, 2017, plaintiff was present on defendant's platform station at New York City's Pennsylvania Station. After a use of a taser gun by defendant's police office on an individual present at the station, a stampede resulted, and as a consequence plaintiff incurred injuries.
2. On July 10, 2017, Pulvers, Pulvers & Thompson LLP (herein "PPT") and plaintiff entered to a retainer agreement, under which plaintiff retained PPT's services to represent her in an action against the defendant.
3. In consideration of PPT's services, plaintiff agreed to pay PPT one-third (1/3%) of the monies that may come to her hand whether recovered "by suit, settlement or otherwise..". In addition, it was agreed regarding costs and expenses that "if the client elects to have the Firm advance the money for costs and expenses the fee owed to Pulvers, Pulvers & Thompson, LLP will be calculated on the gross recovery plus the costs and expenses advanced by the firm". Further in the agreement, plaintiff elected to have PPT advance the money for cost and expenses under the terms provided above. **A copy of the retainer agreement entered between the parties is annexed herein as Exhibit A**.
4. Immediately on the same day, PPT sent a notice of claim letter to defendant on behalf of plaintiff. Thereafter, defendant sent a letter denying plaintiff's claim, as defendant asserted that "**no liability exists on the part of Amtrak relating to the incident**". Defendant denial letter is annexed herein as **Exhibit B**.
5. PPT tried to proceed with additional correspondence and settlement discussions with defendant, but upon defendant refusal to engage in any sort of discussions or provide any sort of settlement offer in this matter, on April 3, 2018, PPT commenced an action against defendant by filing summons & complaint with the Supreme Court of the State of New York, County of New York. The case was assigned Index Number 152994/2018 by the New York State Supreme Court, and the Summons & complaint were served upon defendant on April 10, 2018.
6. Thereafter, on April 18, 2018, defendant filed a Notice of Removal with this Honorable

     Court, as well as an answer dated April 20, 2018.
7. In addition, the parties immediately initiated discovery proceedings, as defendant sent a request for production of documents and first set of interrogatories.
8. From that point on, and for the next **sixteen months**, PPT invested the necessary resources and was engaged on behalf of plaintiff in extensive discovery with defendant. Among others, PPT exchanged extensive documentations with defendant, such as responses to defendant documents requests, preparing responses to defendant's interrogatories, preparing plaintiff's initial disclosures and providing defendant with extensive amount of different authorizations as well as responses to three sets of document requests.
9. In addition, PPT served as plaintiff's counsel in **all** of the parties' depositions conducted in the case, which includes:
    a. Providing counsel to plaintiff in her EBT dated April 23, 2019.
    b. Deposing Mr. Joseph Nativo, the defendant's police officer involved in the incident, on April 24, 2019.
10. Shortly upon the conclusion of the parties EBTs, PPT commenced negotiations with defendant with the goal of settling the case. PPT was extremely mindful to liability issues that rose throughout the case and specifically during Mr. Nativo's EBT, which seemed to been following any police protocol throughout the incident, and as such reduced the liability exposure of the defendant.
11. Although the said liability issues, after the extensive negotiations between the parties, defendant provided plaintiff with a settlement offer in the amount of **$17,500.00**. See annexed herein defendant's settlement offer letter, dated May 29, 2019, attached as **Exhibit C**.
12. Following that, I brought the said offer to plaintiff's consideration, with an additional explanation of the liability issues that rose throughout the case. I also expressed a belief that I might be able to get an even higher number from the defendant, if plaintiff supported me in exploring that option.
13. Instead of considering the offer that was provided to her, plaintiff was hostile to me and to the option of settling the case and insisted that additional discovery would be conducted in the case. I tried my best to provide plaintiff with my professional advice (for which she hired my services) that any additional discovery will be unnecessary, but in response I was given a hostile approach by plaintiff, which, as I mentioned did not show any consideration to my advice, and demanded that additional discovery will be requested from defendant.
14. Due to plaintiff's conduct, and after few months in which I was encountered with hostility and disregard to my professional opinion by plaintiff, on July 18, 2019, the undersigned filed a motion to be relived as counsel of plaintiff, citing a breakdown in the attorney-client relationship and irreconcilable differences, specifically based on plaintiff's insistence for additional and unnecessary discovery with defendant.
15. In an Order dated July 30, 2019, this Honorable Court, granted PPT's motion, and relived PPT as counsel of plaintiff (Order by Judge Vernon S. Broderick). In accordance with this Honorable Court order, on August 5, 2019, PPT filed Supplemental Affirmation in Support of PPT's motion to be relived as plaintiff's counsel, in which PPT asserted a charging lien on any potential recovery in this matter for expenses paid and work performed on the case. Supplemental Affirmation in Support dated August 5, 2019, is attached as **Exhibit D**.
16. Few months thereafter, I was contacted by Ms. Susanne Keane, Esq., who serves as plaintiff's current counsel. Ms. Keane informed me that the case has been settled and requested that I will provide her with PPT's fees and expense for the case. I replied that as per our retainer agreement with plaintiff, we request fees equal to one-third (1/3) of the settlement offer that we were able to provide plaintiff with, hence, amount of $5,833.33, plus

PPT's expenses on the case on behalf of plaintiff, which came up to $1,269.20, and in total an amount of **$7,102.53**.

17. It should be noted that PPT deserves fees in the sum equals to one-third (1/3) of the sum of the settlement (which is unknown to PPT) but in an effort to resolve the matter and not to consume unnecessary time of this Honorable Court, PPT demanded only fees in the amount equals to one-third of the settlement offer that it obtained from defendant and not more.
18. In response, I received from plaintiff an insulting "offer" which came up to a disgraceful amount of **$1,269.20**!! hence, plaintiff believed that PPT is not entitled to **any fees** for the **two years** in which PPT faithfully represented plaintiff.
19. Following the disgraceful and insulting "offer" that I received, PPT, as well as plaintiff's counsel, filed a request with this Honorable Court to schedule a conference regarding the current fee dispute.
20. This is the place to emphasize that when PPT was retained as plaintiff's counsel defendant denied considering any settlement in the case due to the liability issues. Following the extensive work by PPT, including commencing a case against the defendant and engaging in a **sixteen (16) months** extensive and time consuming discovery stage, including the parties' depositions, defendant submitted a settlement offer in the amount of $**17,500.00**, which potentially could have been higher with plaintiff's corporation, but was obstructed by plaintiff insistence to conduct additional unnecessary discovery.
21. With all due respect, it cannot be allowed that PPT, who invested an enormous amount of time and resources, including covering for plaintiff's expenses, would not be paid its well-earned fees.
22. It should further be considered that plaintiff reached a settlement only few months after PPT was relived as counsel while profiting from all of the work plaintiff preformed in the case. The aforesaid settlement was reached without any filing or additional action by either parties. Under these circumstances it is clear that without all of PPT's work and effort the case would never have been riped and position to be settled, and thus PPT should be compensated accordingly for its efforts that brought this case to be settled.

## **APPLIABLE LAW**

23. It is well established that "whenever a *district court* has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees." *Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 225 (2d Cir. 2004)*; accord *In re Austrian & German Bank Holocaust Litig., 317 F.3d 91, 98 (2d Cir. 2003)*; *Mason v. City of New York, 2016 U.S. Dist. LEXIS 63198, 2016 WL 2766652, at \*2 (S.D.N.Y. May 12, 2016)*.
24. In addition, it has been ruled that *New York* law governs disputes over a charging lien in federal courts sitting in *New York*. *Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 178 (2d Cir. 2001)*. In *New York*, "[t]he charging lien was created by the common-law courts as a device to protect an attorney by 'disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.'" *LMWT Realty Corp. v. Davis Agency Inc., 85 N.Y.2d 462, 469, 649 N.E.2d 1183, 626 N.Y.S.2d 39 (1995)* (quoting *Goodrich v. McDonald, 112 N.Y. 157, 163, 19 N.E. 649, 16 Civ. Proc. R. 222, 20 N.Y. St. 509 (1889))*.
25. The charging lien is codified in *New York Judiciary Law § 475*, which states that an attorney "who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come[.]" "[A]n attorney need not be counsel of record at the time a plaintiff

receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings." *Harley & Browne v. United States, 957 F. Supp. 44, 48 (S.D.N.Y. 1997)* (citing *Klein v. Eubank, 87 N.Y.2d 459, 462, 663 N.E.2d 599, 640 N.Y.S.2d 443 (1996))*.

26. The case law further provided that *withdrawing* attorney is entitled to this statutory lien if he has withdrawn for "good cause," which requires a determination of which side is in fact responsible for the attorney-client conflict. *Hallmark, 1997 U.S. Dist. LEXIS 16328, 1997 WL 661146.*

### **CONSLUSION**

27. As extensively elaborated above, for a period of **two years** PPT represented plaintiff in her case against the defendant. During that period, PPT have commenced the action against defendant, and conducted a full and extensive discovery stage with the defendant.
28. as a consequence of its extensive work, PPT managed to bring the case from a denial on behalf of defendant to an offer of $**17,500.00**.
29. Thereafter, plaintiff became hostile towards our firm and insisted on conducting additional unnecessary discovery, which eventually resulted with a breakdown in the attorney-client relationship and irreconcilable differences.
30. As plaintiff refused and disregarded PPT's opinion regarding the requisite of additional discovery in the case and insisted that PPT will request immaterial discovery, she became the sole responsible for the breakdown in the attorney-client relationship.
31. Only few months after PPT was relived from the case, defendant reached a settlement agreement, while profiting from the extensive work that PPT performed.
32. As explained before, no substantive action was taken by any of the parties between the time PPT was relieved as counsel, and the time the parties reached a settlement, and thus it is clear that without PPT work on the case the case would have never been positioned to be settled the way it did.
33. After all the above, plaintiff refused to pay any fee to PPT, by providing an insulting "offer" to only pay back for the expenses that PPT paid for her behalf. It should be noted that PPT should be paid fees in the sum equals to one-third (1/3) of the sum of the settlement (which is not known to PPT), but in an effort to settle the case and not to consume unnecessary time of this Honorable Court, PPT demanded only one-third of the settlement offer that it obtained from defendant (which could have been even higher without the plaintiff's obstruction).
34. This Honorable Court is requested to consider all the above, so as plaintiff will be instructed to pay PPT its well-earned fees and expenses, which are in total **$7,102.53** (one-third from the offer that PPT was able to obtain from defendant plus PPT's expenses on behalf of plaintiff).

Thank you for your consideration.

Very Truly Yours,

PULVERS, PULVERS & THOMPSON, LLP

*Marc R. Thompson*

Marc R. Thompson

cc: New York Legal Assistance Group
Thurgood Marshall United States Courthouse
Room LL22
40 Centre Street
New York, NY 10007
SKeane@nylag.org